UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| A.J. COPELAND, | Case No.: 5:11-cv-01058 EJD |
| Plaintiff, | **ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE** |
| v. | |
| RAYMOND J. LANE, et. al., | (Re: Docket Nos. 68, 71, 72, 74, 89) |
| Defendants. | |

Pending before the court are Defendants' four motions to dismiss Plaintiff A.J. Copeland's ("Copeland") First Amended Complaint ("FAC"), as well as a related motion to strike. For the reasons discussed below, the motions to dismiss are GRANTED with leave to amend and the motion to strike is DENIED.

**I. BACKGROUND**

On December 2, 2011, Copeland filed the FAC alleging that Defendants violated Section 14(a) of the Exchange Act, and breached their fiduciary duty and wasted corporate assets. The FAC alleges the following facts.

Plaintiff A.J. Copeland ("Copeland") owns and has continuously owned common stock in Nominal Defendant Hewlett-Packard Company ("HP") throughout all of period of the alleged wrongdoing. FAC ¶ 12. Defendant Raymond J. Lane ("Lane") has been HP's Executive Chairman since September 2011 and previously served as HP's non-executive Chairman from November

2010 to September 2011. Id. ¶ 15. Defendant Leo Apotheker ("Apotheker") was HP's President and Chief Executive Officer ("CEO") from November 1, 2010 to September 22, 2011. Id. ¶ 16. Defendant G. Kennedy Thompson ("Thompson") was elected to the Board of Directors (the "Board") in 2006. Id. ¶ 19. Defendant Gary M. Reiner ("Reiner") became a member of the Board on January 20, 2012. Id. ¶ 20. Defendants Joel Z. Hyatt ("Hyatt"), John Joyce ("Joyce"), Lucille Salhany ("Salhany"), and Robert Ryan ("Ryan") were directors of HP and resigned on January 20, 2011. Id. ¶ 21. Defendant Meg Whitman became HP's President and CEO on September 22, 2011 and was elected to the Board in January 2011. Id. ¶ 22. Defendants Shumeet Banerji ("Banerji"), Patricia Russo ("Russo"), Dominique Sequier ("Sequier"), Marc L. Andreessen ("Andreessen"), Sari M. Baldauf ("Baldauf"), Rajiv L. Gupta ("Gupta"), Lawrence T. Babbio ("Babbio"), and John H. Hammergren ("Hammergren") are directors of HP who have been directors during all of the wrongful conducted alleged in this action. Id. ¶ 23. Defendant Mark V. Hurd ("Hurd") was President and CEO of HP and was fired from or voluntarily resigned his positions on August 6, 2010. Id. ¶ 24.

The Section 14(a) claim is asserted against the Defendants who were members of the Board when the 2010 and 2011 Proxy Statements were issued to HP shareholders. Id. ¶ 150. These Proxy Statements solicited the votes of Copeland and the other shareholders for the election and re-election of the Board and the retention of Ernst & Young LLP as HP's auditor ("EY"). Id. The Proxy Statements contained false statements and omitted material facts. Id. In particular, the Proxy Statements failed to disclose the extent to which the Board was responsible for wrongdoing that caused HP to be exposed to fines, restitution, and other damages including amounts paid to Hurd, the losses HP will sustain as a result of acquiring 3PAR for more than $2.3 billion. Id. ¶ 153.

The breach of fiduciary duty and waste of corporate assets claim is asserted against all individually-named Defendants. Id. ¶ 156. Plaintiff alleges that the Defendants violated their corporate responsibilities in at least the following ways: (1) declining to stop HP's illegal payment of bribes after receiving reports of that illegal activity and red flags indicating that widespread illegality, or consciously disregarding such reports and activity; (2) failing to pursue claims against those who victimized HP in their anti-competitive behaviour in violation of antitrust laws; (3)

2

permitting Hurd to act as he did in the Hurd-Fisher Scandal; (4) wasting assets by authorizing management to engage in bidding for the acquisition of 3PAR for more than $2.3 billion; and (5) failing to implement a CEO succession plan, and recklessly hiring and firing CEOs resulting in waste of assets in severance payments. Id. ¶ 157.

On August 23 and 28, 2010, Copeland made pre-suit demands on the Board as required by Fed. R. Civ. P. 23.1. Id. ¶ 101; see Exs. A and B. Copeland's counsel was informed on November 4, 2010 and then on November 16, 2010 by HP's Deputy General Counsel, John F. Schultz ("Schultz") that the Board was investigating the allegations in Copeland's Demands. The Board concurrently was interviewing individuals who might comprise a new committee to take over the investigation that the Board had falsely claimed was already underway. Id. ¶ 103. Schultz did not disclose that the Board had already appointed the Ryan-Salhany "Special Committee" which was acting independently of the Board. Id. ¶ 103. Additional Board members were selected based on these interviews. Id. ¶¶ 33, 103, 105. This expanded Board appointed an "Independent Committee" of directors, with Andrew J. Levander and his law firm, Dechert LLP (collectively "Levander"), serving as its counsel. Id. ¶105. The Independent Committee purported to take over the investigation of Plaintiff's claims, but, in reality, the Board had taken no action at all. Id. ¶ 32.

The members of the Committee decided at the outset to delegate their own fact-gathering and analysis responsibilities to Levander. Id. ¶ 107. Levander conducted interviews of selected individuals, not under oath, and without a recording or transcript. This strategy cloaked all or much of the factual investigation, and all communications between counsel and members of the Independent Committee and witnesses, behind claims of work product and privilege. Id. ¶ 108.

On February 10, 2011, Levander sent a letter to Copeland's counsel stating that the Board had appointed the Independent Committee. Id. ¶¶ 30, 109. With minimal advance notice and no necessary information, Levander also invited Copeland's counsel to meet with one or more members of the Independent Committee. Id. ¶ 110. Copeland's counsel requested fundamental information and documents regarding the legitimacy of the investigation, including how the members of the Independent Committee had been selected and how it came about that Levander

3
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE

would be the investigator. But Levander refused to provide any of the requested information to Copland's counsel and ended all discourse. Id. ¶¶ 111, 116.

On March 7, 2011, Plaintiff commenced this action alleging that the Board had constructively and wrongfully rejected his demands. On April 6, 2011, HP moved to dismiss that complaint on the ground that it was filed prematurely. See Docket No. 10. After completing its investigation, the Independent Committee issued a report formally recommending that the Board reject Copeland's Demands, and the Board did so. FAC ¶ 118. On November 9, 2011, the parties informed the court that, in light of the Board's rejection of Copeland's Demands, Copeland intended to amend his complaint. HP withdrew its then-pending motion to dismiss. Docket No. 52.

On December 2, 2011, Copeland filed the FAC. On February 8, 2012, Defendants filed their motions to dismiss the FAC and their Requests for Judicial Notice ("RJNs"). On March 27, 2012, Copeland filed a motion to strike certain exhibits submitted in support of the motions to dismiss and all references thereto. On May 8, 2012, the motions were taken under submission without oral argument. See Civ. L.R. 7-1(b).

## II. LEGAL STANDARD

**A. Motion To Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Recitals of the elements of a cause of action and conclusory allegations are insufficient. Id.

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 555, 570. In considering the sufficiency

4
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE

of a claim, the court must accept as true all of the factual allegations contained in the complaint. Id. at 555–56. However, the court is not required to accept as true legal conclusions cast in the form of factual allegations. Id. at 555.

If dismissal is granted under Rule 12(b)(6), leave to amend should be allowed unless the pleading could not possibly be cured by the allegation of other facts. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). If amendment would be futile, however, a dismissal may be ordered with prejudice. Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996) (internal quotations omitted).

**B. Demand Refusal**

A shareholder derivative suit is a uniquely equitable remedy in which a shareholder asserts on behalf of a corporation a claim belonging not to the shareholder, but to the corporation. Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984) (overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000)). Pursuant to Federal Rule of Civil Procedure 23.1, which governs derivative actions, a shareholder's complaint must state with particularity "any effort by the plaintiff to obtain the desired action from the directors" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1.

Rule 23.1 imposes a higher standard of pleading than Rule 8(a). The Ninth Circuit recently held in a demand refused case that "Rule 23.1 and applicable Delaware law require a shareholder bringing a derivative lawsuit to plead with particularity that the shareholder made a pre-suit demand on the corporation and that the corporation wrongly refused to act." Lucas v. Lewis, 428 F. App'x 694, 695-96 (9th Cir. Apr. 15, 2011) (emphasis added) (citing Fed. R. Civ. P. 23.1(b)(A) & (B); Grimes v. Donald, 673 A.2d 1207, 1220 (Del. 1996)).

**C. Choice of Law**

When a federal court sits in diversity, it looks to the forum state's choice of law rules to determine the controlling substantive law. Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002). Here, because HP has its corporate headquarters and main place of business in Palo Alto, California, the court applies California state law.

Pursuant to the "internal affairs" doctrine, which is generally followed by courts in California, "the law of the state of incorporation governs liabilities of officers or directors to the

5
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE

corporation or its shareholders." In re Sagent Tech., Inc., Derivative Litig., 278 F. Supp. 2d 1079, 1086 (N.D. Cal. 2003); see Cal. Corp. Code § 2116. Additionally, the demand requirements for a shareholder derivative suit are determined by the law of the state of incorporation. Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 96 (1991) ("the function of the demand doctrine . . . is a matter 'substance' not 'procedure'. . . . [Courts] must apply the demand futility exception as it is defined by the law of the state of incorporation"); Potter v. Hughes, 546 F.3d 1051, 1054 n. 1 (9th Cir. 2008) ("the substantive demand requirement is an issue of state law"). Accordingly, because HP is incorporated in Delaware, the court applies Delaware law to determine whether the demand was wrongly refused.

## III. DISCUSSION

In moving to dismiss, Defendants assert that the Board's refusal of the claims raised in Copeland's Demand is protected by the business judgment rule. Defendants contend that Copeland failed to plead any particularized facts to raise a reasonable doubt that the Board acted independently, in an informed manner and with due care or that it conducted a reasonable investigation. Defendants also argue that Copeland's lack of good faith allegations are conclusory and insufficient.

In order to demonstrate standing to pursue a derivative claim, a plaintiff must show that he has met the demand requirement. If a demand is made and rejected, the board rejecting the demand is entitled to the presumption of the business judgment rule unless the stockholder can allege facts with particularity creating a reasonable doubt that the board is not entitled to the benefit of the presumption. See Grimes, 673 A.2d at 1220; see also Levine v. Smith, 591 A.2d 194, 212 (Del. 1991), overruled on other grounds by Brehm, 746 A.2d 244, (the board's refusal of the demand to pursue the action is subject to judicial review according to the traditional business judgment rule).

Under the business judgment rule, a court will not substitute its judgment for that of the board, and the board's decision will be upheld unless it cannot be attributed to any rational business purpose. See In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 74 (Del. 2006) (en banc); Levine, 591 A.2d at 207. A board of directors' decision will be respected by the courts unless the directors are interested or lack independence relative to the decision, do not act in good faith, act in

6
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE

a manner that cannot be attributed to a rational business purpose, or reach their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available. Brehm, 746 A.2d at 264 n.66. "A shareholder who makes a demand concedes the disinterestedness and independence of a majority of the board to respond to the demand and waives any claim that demand is excused." See Furman v. Walton, No. C 06-3532 SBA, 2007 WL 1455904, at *4 (N.D. Cal. May 16, 2007) (citing Grimes, 673 A.2d at 1219-20; Rales v. Blasband, 634 A.2d 927, 935 n.12 (Del. 1993)).

Where a shareholder's complaint is predicated on the wrongful refusal of her demand, the only issue for a trial court to determine is the application of the business judgment rule to the board's refusal of the shareholder's demand. See Levine, 591 A.2d at 212-13 (Del. 1991). The only relevant question is whether the directors acted in an informed manner and with due care, and in a good faith belief that their action was in the best interest of the corporation. See id. at 198.

**A. Disinterested and Independent**

As discussed above, a shareholder who has made demand "concedes the disinterestedness and independence of a majority of the board to respond to the demand." Furman, 2007 WL 1455904, at *4. Plaintiff argues that the Demands did not concede "independence conclusively and *in futuro* for all purposes." Scattered Corp. v. Chi. Stock Exch., Inc., 701 A.2d 70, 74-75 (Del. 1997) overruled on other grounds by Brehm. In Scattered, the Delaware Supreme Court held that "a board that appears independent *ex ante* may not necessarily act independently *ex post* in rejecting a demand. Failure of an otherwise independent-appearing board or committee to act independently is a failure to carry out its fiduciary duties in good faith or to conduct a reasonable investigation. Such failure could constitute wrongful refusal." Scattered, 701 A.2d at 75 (emphasis in original). Thus, a plaintiff may show that demand was wrongfully refused by pointing to events occurring after the demand which demonstrate a lack of independence, but not events occurring before the demand.

Here, Copeland has not asserted any facts challenging the Board's independence based on events after receiving the Demands. Copeland instead alleges that a majority of the Board is personally implicated in the alleged wrongdoing—conduct that necessarily occurred prior to the

7
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE

1   Demands being made. Opp'n at 38-41 (a majority of directors has a "vested interest in preventing
2   discovery from revealing their substantial personal liability for their personal wrongdoing
3   including liability under the FCPA or Anti-Kickback Act due to acquiescence in various kickback
4   and bribery schemes"). These allegations challenge the directors' interest and independence with
5   respect to the conduct underlying the Demands, not their response following receipt of he
6   Demands. These allegations were waived when Copeland made his Demands. Thus, the FAC fails
7   to raise a reasonable doubt that the Board was disinterested and independent.

**B. Good Faith**

9   Copeland alleges that the Board did not act in good faith because: (1) the Board did not
10  include Plaintiff in its investigation; (2) the Board refused to provide Plaintiff with certain
11  information; (3) the Board claimed to be investigating the Demands while it was searching for
12  members to constitute the Independent Committee; (4) the investigation was a "sham" or
13  "whitewash" because the Independent Committee members chosen were predisposed to reject the
14  demands; (5) the Independent Committee did not have ultimate authority to respond to the
15  Demands; and (6) the Committee's counsel was also predisposed to reject the Demands. The court
16  addresses each of these allegations below.

17  Copeland alleges the board failed to include Copeland in its investigation, took three
18  months before HP contacted Copeland's counsel about his Demands and another two months to
19  come up with the strategy to create the Independent Committee; did not tell Copeland it was
20  interviewing individuals to serve on the Independent Committee; did not provide Copeland's
21  counsel with prompt answers to seventeen questions he had posed about the Committee and its
22  investigation; and only offered to meet with Copeland's counsel on less than two weeks' notice.
23  FAC ¶¶ 32-33, 103-104, 110-16. There, however, is no requirement that a board keep a plaintiff
24  informed throughout the investigation and review. See FLI Deep Marine LLC v. McKim, No.
25  4138, 2009 WL 1204363, at *4 (Del. Ch. Apr. 21, 2009) (rejecting argument that demand was
26  refused because special committee failed to keep plaintiffs informed of investigation and did not
27  agree to conduct investigation on plaintiffs' terms); Levine, 591 A.2d at 214 (board's failure to
28  allow plaintiff to make a presentation did not demonstrate wrongful refusal). Thus, these

8
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE

allegations about the investigation process are not sufficient to create a reasonable doubt that the Board acted in good faith.

Copeland also alleges that HP falsely told him that it was investigating his Demands in an effort to "'buy time' and come up with a strategy that would have the appearance of credibility." ¶ 32. The FAC, however, does not plead facts showing that Schultz's statement that the Board was "investigating the allegations in [Plaintiff's] demand[s]" was false. Id. n.6 (alterations in original). Furthermore, the fact that the Board chose to appoint an Independent Committee to conduct the investigation is not inconsistent with the Board's fiduciary duties. There is "no prescribed procedure a board must follow" when investigating a demand. Levine, 591 A.2d at 214. "To allow Plaintiffs the ability to dictate the manner in which the Board, or its special committee, investigates their allegations would 'be an unwarranted intrusion' upon the authority our law confers on a board of directors to manage the business and affairs of the corporation." FLI Deep Marine LLC, 2009 WL 1204363, at *4 (footnote omitted). Thus, allegations that the Board claimed to be investigating the Demands while it was searching for members to constitute the Independent Committee are not sufficient to create a reasonable doubt that the Board acted in good faith.

The FAC also asserts that the Board's process was a "sham" and "whitewash" and that the Independent Committee members were "pre-disposed" to reject the Demands. FAC ¶¶ 31, 116-18. Copeland, however, has not alleged facts suggesting that the Independent Committee members were beholden to an interested person or otherwise conflicted by self-interest. As Defendants argue, the mere fact that the Independent Committee recommended that the Board refuse Copeland's Demands is not enough to show bad faith. See Lerner ex. rel. Citigroup Inc. v. Prince, 36 Misc. 3d 297, 307 (N.Y. Sup. 2012) (allegations that Demand Committee was a sham in its inception was conclusory and insufficient); Grimes, 673 A.2d at 1220 (bare allegation that refusal "could not have been the result of an adequate, good faith investigation" insufficient); Levine, 591 A.2d at 213 n.7 (affirming dismissal for failure to plead wrongful refusal where complaint alleged, "the Board was predisposed to refuse plaintiff's demand for action").

In opposition to this motion, Copeland argues that the investigation was a sham because the Independent Committee was not given the ultimate authority to decide how to respond to Plaintiff's

9
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE

1 Demands. See Opp'n at 38, 42. Defendants argue that by making a demand, Plaintiff conceded the full Board's independence and disinterestedness to consider the Demands, and thus there was no requirement to create a special litigation committee with decision-making authority.

The Board created a committee that did not reject or accept the Demands. As the FAC acknowledges, the Independent Committee was formed "'to investigate, review, and evaluate the facts and circumstances asserted . . . and to make recommendations to the Board whether HP should commence or continue litigation.'" FAC ¶ 15. The Board spoke for the company and made the decision to reject Plaintiff's Demands. See id. ¶ 118. HP argues, and the court agrees, that procedure is appropriate. See FLI Deep Marine LLC v. McKim, No. 4138, 2009 WL 1204363, at *2 (Del. Ch. Apr. 21, 2009) ("Board formed a special committee to investigate the allegations asserted in the demand letter and to make a recommendation to the Board"); Boeing Co. v. Shrontz, No. 11273, 1994 WL 30542, at *4 (Del. Ch. Jan. 19, 1994) (dismissing for failure to plead wrongful refusal following board's decision based on "recommendations" of special committee). Copeland has not cited any authority indicating a board is required transfer its decision-making authority to a special litigation committee to evaluate a demand.[1]

The FAC alleges that Levander was also predisposed to refuse the demands and that relegated the investigation to Levander. FAC at 19 n.5. Additionally, Copeland alleges that the Independent Committee relegated the investigation to Levander, creating a conflict of interest. Opp'n at 6. The FAC, however, makes no allegation that Dechert or Levander ever represented any individual named in the Demands or are beholden to any member of the Board or otherwise impeded by a conflict of interest. Copeland has not alleged what tasks created a conflict for Levander or cited any authority indicating that relegating duties to Levander could create a conflict. Without such allegations, Plaintiff has offered no basis for determining the Committee's

---

[1] Copeland's opposition brief cites Abbey v. Computer & Commc'ns Tech. Corp., 457 A.2d 368, 372-373 (Del. Ch. 1983) for the holding that a properly formed special litigation committee permits an independent committee, rather than the board of directors, to speak on behalf of the corporation. The decision in Abbey, however, does not prohibit the procedure used by the Board in this action and acknowledges that in some situations a board might "merely appoint[] a committee to investigate the allegations and to report back to the board for whatever action the board might choose to take on the merits of the charges." Abbey, 457 A.3d at 374.

10
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE

work lacked good faith. See Halpert Enterprises, Inc. v. Harrison, No. 07-1144-cv, 2008 WL 4585466, at *3 (2nd Cir. Oct. 15, 2008) (allegation that outside counsel lacked independence where "[t]he record contain[ed] no allegations that [outside counsel] had any lingering allegiance to the named defendants regarding those matters, was reluctant to advance arguments disadvantageous to the named defendants, or was impeded by the ethical rules relating to confidentiality.").

**C. Informed Manner And Due Care**

Defendants argue that Copeland has also failed to plead facts that raise a reasonable doubt that the Board acted in an informed manner and with due care. In order to raise a reasonable doubt regarding whether the Board acted with due care, Copeland must plead with particularized facts that the Board reached its "decision by a grossly negligent process that includes the failure to consider all material facts reasonably available." Furman, 2007 WL 1455904, at *2 (citing Brehm, 746 A.2d at 244).

The FAC alleges that the Independent Committee and Board spent insufficient time, that witness interviews were too few and not under oath, and that the Independent Committee's report was privileged. The FAC similarly alleges that the Board devoted insufficient time to Plaintiff's Demands. The FAC, however, does not assert particularized facts supporting these allegations. For example, Copeland does not allege the amount time the Independent Committee devoted or how that time spent was inadequate. The FAC identifies no individuals who should have been interviewed but were not, how those unidentified individuals had knowledge that was unique and unobtainable without those interviews, and how those interviews if taken would have altered the Board's decision to refuse demand. See Halpert, 2008 WL 4585466, at *3 (rejecting allegations in absence of these facts); Quantum Technology Partners II, L.P. v. Altman Browning and Company, No. 08-CV-376-BR, 2009 WL 1795574, at *12 (D. Or. June 23, 2009) (similar). The FAC also does not allege any facts indicating that the Board failed to review the Independent Committee's report or make its own determination as to what was in the best interest of HP. Rather, the FAC merely alleges in a conclusory manner that the Board "rubber-stamped" the Independent Committee's rejection. Id. ¶ 118.

Additionally, the FAC's allegations that too few interviews were taken and they were not under oath fail to raise a reasonable doubt that the investigation was conducted with due care because "[a]n investigating board generally is under no obligation to make use of any particular investigative technique." Halpert, 2008 WL 4585466 at *2. "In any investigation, the choice of people to interview or documents to review is one on which reasonable minds may differ." Mount Moriah Cemetery on Behalf of Dun & Bradstreet Corp. v. Mortiz, Civ.A. No. 11431, 1991 WL 50149, at *4 (Del. Ch. Apr. 4, 1991). Furthermore, Copeland has not cited any authority indicating that there is a requirement that witness interviews be conducted, much less be made under oath. Thus, "there is no rule of general application that a board must interview every possible witness who may shed some light on the conduct forming the basis of the litigation." Halpert, 2008 WL 4585466, at *2. "In fact, there is no rule that requires a board to interview anyone." Quantum, 2009 WL 1795574, at *12 (citing Levine v. Smith, 591 A.2d 194, 214 (1991)); Scalisi v. Grills, 501 F. Supp. 2d 356, 365 (E.D.N.Y. 2007) (finding argument to show bad faith that "the Committee here did not place its witnesses under oath during interviews" was insufficient as a matter of law); Strougo ex rel. The Brazil Fund, Inc. v. Padegs, 27 F. Supp. 2d 442, 452 (S.D.N.Y. 1998) (same).

Finally, the FAC also alleges that the Independent Committee delegated fact-gathering and analysis to Levander. ¶ 107. As discussed in the previous section, however, Copeland has not pleaded facts or cited authority indicating that delegating parts of the investigation to Levander was inconsistent with the Board's fiduciary duties. To the contrary, the involvement of outside counsel to assist in conducting the investigation is not uncommon. See, e.g., Spiegel v. Buntrock, 571 A.2d 767, 772, 778 (Del. 1990) (board committee retained independent counsel and conducted investigation); Mount Moriah, 1991 WL 50149, at *3-4 (board established committee, which in turn retained counsel to assist with investigation, culminating in 163-page report). Thus, the FAC has not alleged facts raising a reasonable doubt that HP's Board acted in good faith and in an informed manner.

In sum, the FAC fails to allege facts that raise a reasonable doubt about the good faith and due care of the investigation. Thus, the FAC fails to allege facts that rebut the business judgment rule and plead that Copeland's Demands were wrongfully refused. Accordingly, Defendants'

12
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE

motions to dismiss the derivative claims brought on behalf of HP in the FAC are GRANTED with leave to amend.

**D. No Direct Claims**

Copeland argues that, in addition to his derivative claims, he has also pleaded a direct Section 14(a) claim. FAC ¶ 150. Copeland bases his disclosure claim on false statements and omissions in the 2010 and 2011 Proxy Statements. Specifically, Copeland alleges the 2011 Proxy Statements included the following false statements and omissions (see Opp'n at 15-18):

- To obtain shareholder votes for the Board's nominees for lucrative directorships, the Proxy Statement falsely stated that "HP is committed to maintaining the highest standards of business conduct and corporate governance" and that the Board had six "standing committees." Defendants intentionally concealed that the Board actually had de facto "standing committees" including a "Special Litigation Committee," "Independent Committee" and the Ryan Salhany "Special Committee" designed to investigate (or appear to investigate) repeated acts of director wrongdoing. The identification of certain "standing committees," coupled with the omission of reference to various other "standing committees" violated the sitting directors' disclosure obligations under Section 14(a) and Rule 14a-9. FAC ¶¶28-29.

- The Board falsely represented that HP's "Board Risk Oversight" process was effective when, in fact, it was not, as evidenced in connection with the Company's acquisition of 3PAR and the payment of substantial bribes in the United States and abroad. Id. ¶¶38-39.

- The Board misrepresented the manner in which the Board members were and are evaluated, including with respect to whether they have the appropriate skills and characteristics required to effectively oversee the business and sufficient time to fulfill their obligations to the Company. Id. ¶¶40-42.

- In seeking the ratification by the stockholders of EY as HP's independent registered public accounting firm, the Board failed to disclose that EY was negligent in performing its audits, did not conduct such audits in accordance with GAAS and that EY failed to uncover the payment of substantial bribes in the United States and abroad. Id. ¶44.

- There was a failure to discuss or present any information regarding the violations of law and other ongoing and long-term wrongdoing material to a shareholder's determination of the qualifications of each nominee to serve or continue to serve as a director of the Company and for EY to continue to serve as auditor. Id. ¶45.

- The Board misrepresented that there was an established criteria for assessing potential CEO successors when, in reality, there was no succession plan in place, nor any meaningful process to evaluate potential candidates. Id. ¶¶46-47.

The FAC alleges similar misrepresentations and omissions with respect to the 2010 Proxy Statement, as well as additional misrepresentations and omissions, including the following:

13
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE

- The Board misrepresented that its "HR and Compensation Committee" properly discharged the Board's responsibilities relating to the compensation of HP's executives and directors, when it really provided little or no substantive oversight of senior management's performance and compensation, as demonstrated by Defendant Hurd's ability to pad his expense accounts at least in partial view of the "HR and Compensation Committee" members. Id. ¶¶56-57, 59.

- The Statement falsely reported the Company's obligations to Hurd upon his termination, in an attempt to justify the Compensation Committee's dereliction in awarding benefits to Hurd including a $12,224,693 "cash severance benefit" Id. ¶¶56-57, 59.

- The Company concealed material amounts paid to Hurd for travel and related expenses as well as his personal benefit, including substantial sums to a special friend of Hurd's. Id. ¶58.

"[T]he Court will independently examine the nature of the wrong alleged and any potential relief to make its own determination of the suit's classification. . . . Plaintiffs' classification of the suit is not binding." Tooley v. Donaldson, Luftkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004) (second alteration in original) (citation omitted). In determining whether a shareholder claim is direct or derivative under Delaware law, courts examine: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually). See Indiana Elec. Workers Pension Trust Fund, IBEW v. Dunn, 352 F. App'x 157, 162 (9th Cir. 2009) (citing Feldman v. Cutaia, 951 A.2d 727, 732 (Del. 2008)). To establish a direct action, "[t]he stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." Id. at 1039.

Defendants argue that the Copeland is creatively recasting a derivative claim about mismanagement by alleging the same harm as a direct disclosure violation. Specifically, Defendants argue that the Section 14(a) claim in the FAC is based on mismanagement that harmed HP. Because the Section 14(a) claim alleges that the Proxy Statements included false statements and omissions that hid the fact that the Defendants were mismanaging HP, Copeland must prove that HP was mismanaged in order to prevail on his claim. Additionally, Defendants argue that Copeland has not identified any individual benefit he can receive by this action; there can be no re-vote because the directors elected in the 2010 and 2011 proxies have already served their terms, as has EY.

14
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE

Copeland argues that a claim that shareholders were deprived of the right to a fully informed vote is independent of any injury to the corporation, implicates a duty of disclosure owed to shareholders and is almost always an individual, direct claim. Copeland further argues that it is clear that direct proxy disclosure claims may support equitable relief granted to Copeland, such as an order to void or amend the tainted Proxy Statements and require a re-vote. Copeland argues that a re-vote is possible because many of the directors elected at the 2010 or 2011 Annual Shareholder Meetings as a result of the Proxy Statements at issue are still on the HP Board, and EY remains as HP's independent auditor.

Copeland is correct that where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is almost always an individual, not corporate, harm. See, e.g., In re Tyson Foods, Inc., 919 A.2d 563, 601 (Del. Ch. 2007). Even assuming that Copeland could prevail on his claim that the Proxy Statements contained false statements and material omissions—which appear to depend on a showing that the directors failed to perform their duties and mismanaged HP—without showing injury to HP, the Section 14(a) claim does not satisfy the second prong of Tooely. Copeland has not pleaded facts showing that he could receive any remedy that would benefit him individually through this action.

"Direct proxy disclosure claims, if made promptly, may support equitable relief such as an order to amend a proxy solicitation and require a re-vote. However, when the eggs have been irretrievably scrambled[,] . . . there is no possibility of effective equitable relief. . . . [E]ven if other remedies 'flow naturally' from the avoidance of the vote, these remedies are unavailable because they impermissibly conflate [plaintiff's] direct claim with a derivative claim." Calamore v. Juniper Networks Inc., 364 F. App'x 370, 372 (9th Cir. 2010) (some alterations in original) (emphasis added) (internal quotation marks and citations omitted).

Here, it appears that each the 2010 and 2011 shareholder votes elected the Board members for one year, and the directors elected in the 2010 and 2011 proxies would have already served their one-year terms. Ex. E to Supplemental Danitz Declaration at 24, Docket No. 101-1 ("2010 Proxy") ("Each director is elected annually to serve until the next annual meeting or until his or her successor is elected."); New HP Director Def.'s RJN Ex. C, Docket No. 75-3 at 25 ("2011 Proxy")

15
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE

("each to serve for a one-year term or until the director's successor is elected and qualified").[2] EY has similarly served its one-year terms. 2010 Proxy at 27 ("for the fiscal year ending October 31, 2010)"; 2011 Proxy at 32 ("for the 2011 fiscal year"). Thus, although many of the directors are still on the Board, Defendants argue that the terms of those directors elected via the 2010 and 2011 Proxies have expired and new elections have been held. Copeland has not argued or pleaded otherwise.

Copeland therefore has not requested any individual relief that logically arises from the lack of disclosure and which could be granted at this point in time. See General Electric Co. v. Cathcart, 980 F.2d 927, 934 (3rd Cir. 1992) (the court "cannot grant effective relief . . . because the terms of the directors elected in 1987-1991 have expired and there was a new election for directors on April 22, 1992 . . . . Thus, a court only could grant him equitable relief with respect to the expired terms by doing the impossible: enjoining the directors from serving expired terms."); see also Cohen v. Ayers, 449 F. Supp. 298, 321 (N.D. Ill. 1978) (dismissing Section 14(a) claim as moot because it was impossible to bar directors from holding office for terms now concluded). Because Copeland has not pleaded any recovery or remedy that benefits him individually, as opposed to HP, the claim is derivative under Tooley.

Because all claims asserted in the FAC are derivative claims and Copeland has not pleaded facts sufficient to claim his Demands were wrongly refused, the FAC is dismissed in its entirety.

**E. Cross-Motion To Strike**

With the exception of the 2011 Proxy Statement, which, as discussed above, is incorporated by reference in the FAC, Defendants' pending Requests for Judicial Notice are DENIED as moot because the court has reached its decision without relying on those documents. See Docket Nos.

---

[2] The 2010 and 2011 Proxy Statements are incorporated by reference in the FAC. See In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999) (Under the incorporation by reference doctrine, district courts may "consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'") (alteration in original). The court notes Copeland's objection that, although the Proxy Statements may be cited to establish what statements they contain, they should not be cited for the truth of those statements. See Docket No. 90 at 3:24-6:17. Here, Defendants cite the documents to establish what statements were made to shareholders about the vote, specifically, the term of the director to be elected by the shareholder votes.

16
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE

69, 73, 75. On March 27, 2012, Copeland filed a motion to strike the documents that are the subject of those requests. See Docket No. 90. The motion to strike, however, appears to be limited to opposing to the RJNs and does not argue that there is any reason the documents and references to those documents must be stricken in addition to the RJNs being denied. Thus, because the RJNs have been denied as moot, the motion to strike those documents is also DENIED as moot.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss (Docket Nos. 68, 71, 72, 74) are GRANTED and the FAC is DISMISSED WITH LEAVE TO AMEND. Any amended complaint shall be filed no later than **November 1, 2012.**

The motion to strike (Docket No. 89) is DENIED AS MOOT.

The court schedules this case for a Case Management Conference on **November 30, 2012 at 10:00 a.m.** The parties shall file a Joint Case Management Conference Statement on or before **November 21, 2012.**

**IT IS SO ORDERED**

Dated: October 10, 2012

_____
EDWARD J. DAVILA
United States District Judge

17
Case No.: 5:11-CV-1058 EJD
ORDER GRANTING MOTIONS TO DISMISS; DENYING MOTION TO STRIKE