Ilene F. Brookler (Bar #269422)
Richard D. Greenfield
(Admitted *Pro Hac Vice*)
Marguerite R. Goodman
GREENFIELD & GOODMAN, LLC
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: 917-495-4446
ibrookler@gmail.com
whitehatrdg@earthlink.net
twowhitehats@earthlink.net

Attorneys for Plaintiff, A.J. Copeland

(Additional Counsel on Signature Page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| **A.J. COPELAND,** Individually and Derivatively on Behalf of **HEWLETT-PACKARD COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**RAYMOND J. LANE, et al.,**<br><br>Defendants,<br><br>and<br><br>**HEWLETT-PACKARD COMPANY,**<br><br>Nominal Defendant. | Civil Action No.<br>11-CV-01058 (EJD)<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND TO MODIFY SCHEDULING ORDER**<br><br>Hearing Date: March 22, 2013<br>Hearing Time: 9:00 a.m.<br>Courtroom 1, 5th Floor<br>Before: Hon. Edward J. Davila |

PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO MODIFY SCHEDULING ORDER

# TABLE OF CONTENTS

**NOTICE OF MOTION AND MOTION** ........................................................................................ 1

**STATEMENT OF RELIEF SOUGHT** ........................................................................................ 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................................. 1

**I.     INTRODUCTION** .............................................................................................................. 1

**II.    PERTINENT FACTS AND PROCEDURAL HISTORY AND HP'S NOVEMBER 20, 2012 AUTONOMY WRITE-DOWN** ................................................................................ 3

    **A.    Pertinent Facts** ....................................................................................................... 3

    **B.    Pertinent Procedural History** ................................................................................ 4

    **C.    HP'S November 20, 2012 Autonomy Write-Down** .............................................. 4

**III.   ARGUMENT** ..................................................................................................................... 6

    **A.    There is Good Cause** .............................................................................................. 7

    **B.    There Is No Bad Faith Or Undue Delay** ............................................................... 9

    **C.    There Is No Undue Prejudice To Defendants** ....................................................... 9

    **D.    The Amendment Is Not Futile** ............................................................................. 11

**IV.    CONCLUSION** ............................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Allied World Nat'l Assur. Co. v. SK PM Corp.*, Case No.: 1:10-cv-01262-LJO-JLT, 2012 U.S. Dist. LEXIS 163642 (E.D. Cal. Nov. 15, 2012)............................................................ 11

*Ambrose v. Coffey*, No. Civ. S-08-1664 LKK/GGH, 2012 U.S. Dist. LEXIS 157889 (E.D. Cal. Nov. 1, 2012) ............................................................................................................. 11

*Bahn v. Korean Airlines Co.*, 642 F.3d 685 (9th Cir. 2011)...................................................... 6

*Cuevas v. City of Campbell*, Case No.: 5:12-CV-03087-EJD, 2012 U.S. Dist. LEXIS 150415 (N.D. Cal. Oct. 18, 2012)........................................................................................... 10

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003)........................................ 7, 9

*Foman v. Davis*, 371 U.S. 178 (1962) ............................................................................... 6, 7

*Fulton v. Advantage Sales & Mktg., LLC*, No. 3:11-cv-01050-MO, 2012 U.S. Dist. LEXIS 150151 (N.D. Cal. Oct. 12, 2012) .......................................................................... 11

*James v. UMG Recordings, Inc.*, No. C 11-1613 SI, 2012 U.S. Dist. LEXIS 146759 (N.D. Cal. Oct. 11, 2012)............................................................................................ 10

*Jeong v. Minn. Mut. Life Ins. Co.*, 46 Fed. Appx. 448 (9th Cir. 2002)........................................ 9, 10

*Johnson v. Mammoth Recreations*, 975 F.2d 604 (9th Cir. 1992) ............................................. 7

*Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994) ...................................................................... 7

*Livingston Hearing Aid Ctr., Inc. v. Insound Med., Inc.*, Case No. 5:11-CV-01965 EJD, 2012 U.S. Dist. LEXIS 47139 (N.D. Cal. April 3, 2012) ........................................... 7

*McConnell v. Red Robin Int'l, Inc.*, No. C 11-03026 WHA, 2012 U.S. Dist. LEXIS 53942 (N.D. Cal. April 17, 2012) ..................................................................................... 9

*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209 (9th Cir. 1988)) .................................................. 11

*Mytee Prods. v. H.D. Prods.*, Case No. 05 CV-2286 W (CAB), 2007 U.S. Dist. LEXIS 84933 (S.D. Cal. Nov. 16, 2007) ................................................................................ 7

*Nordyke v. King*, 644 F.3d 776 (9th Cir. 2011), *aff'd on reh'g en banc on other grounds*, 681 F.3d 1041 (9th Cir. 2012) .................................................................... 11

*Nucal Foods, Inc. v. Quality Egg LLC*, No. CIV S-10-3105 KHM-CKD, 2012 U.S. Dist. LEXIS 10067 (E.D. Cal. Jan. 27, 2012).................................................................. 7

*Osalan v. Apple Am. Group*, Case No: C 08-4722 SBA, 2010 U.S. Dist. LEXIS 53830 (N.D. Cal. May 5, 2010) ................................................................................ 7

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir. 2001) ....................................... 10

*Padilla v. Sears*, Case No., 5:12-CV-00653 EJD, 2012 U.S. Dist. LEXIS 162207 (N.D. Cal. Nov. 13, 2012)....................................................................................... 10, 11

ii

*Shum v. Countrywide Home Loans, Inc.*, Case No.: 2:11-cv-01932-GMN-RJJ, 2012 U.S. Dist. LEXIS 145836 (D. Nev. Oct. 10, 2012) ........................................................... 9

*Sorensen v. Lexar Media, Inc.*, Case No. 5:08-CV-0095 EJD, 2012 U.S. Dist. LEXIS 36742 (N.D. Cal. Mar. 19, 2012).................................................................................. 8

*Sousa v. Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan*, 252 F. Supp. 2d 1046 (E.D. Cal. 2002)................................................................................. 8

**Rules**

Fed R. Civ. P. 12(b)(6)............................................................................................................. 11

Fed. R. Civ. P. 15(a) ............................................................................................................ 6, 7

Fed. R. Civ. P. 16(b)(4)............................................................................................................ 7

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 22, 2013, or as soon thereafter as the matter may be heard, Plaintiff, A. J. Copeland ("Plaintiff"), by his undersigned counsel, will move for leave to amend his complaint pursuant to Rules 15 and 16 of the Federal Rules of Civil Procedure and to modify the November 6, 2012 scheduling order. The grounds for this Motion are set forth in the accompanying Memorandum of Points and Authorities, the pleadings on file in this action, and such other matters, evidence, and arguments as may be presented to the Court before or at the hearing on this Motion.

## STATEMENT OF RELIEF SOUGHT

Plaintiff seeks an order permitting him to amend his complaint and modifying the November 6, 2012 scheduling order.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This is a shareholder's suit brought in Plaintiff's individual capacity and derivatively on behalf of Nominal Defendant Hewlett Packard and Company ("HP" or the "Company") to address, *inter alia*, the Company's 2012 proxy statement and systemic failures of corporate governance and gross mismanagement on the part of the HP Board of Directors ("HP Board" or "Board").

This Court's October 10, 2012 order gave Plaintiff leave to file an amended complaint, which Plaintiff did on November 1, 2012 with the filing of his Second Amended Complaint ("SAC").

The SAC included, *inter alia*, allegations regarding the reckless purchase of 3Par in September 2010, and referred to the subsequent purchase of Autonomy Corporation ("Autonomy") in October 2011, which culminated HP's decade-long

PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO MODIFY SCHEDULING ORDER                                          1

history of reckless acquisitions at overinflated prices.[1] As to Autonomy, the SAC said specifically:

> **"The Board continued such conduct when Defendant Apotheker was CEO with the reckless acquisition by HP of Autonomy Corporation in October 2011 for $11.7 billion. No specific claim is made in this Complaint with respect to the Autonomy transaction, which occurred subsequent to the commencement of this litigation. Nevertheless, as with the 3Par acquisition, the purchase of Autonomy was made without due regard to the opinions of HP's own experts and securities analysts who had determined that the price paid was grossly excessive."[2]**

A little less than three weeks after the SAC was filed, Plaintiff's expressed concern about HP's acquisition of Autonomy was unfortunately validated.  On November 20, 2012, HP announced that it was writing down $8.8 billion relating to the $11.7 billion spent acquiring Autonomy in October 2011, attributing the write-down primarily to Autonomy's "serious accounting improprieties" prior to the acquisition ("Autonomy Write-Down").

In light of the developing news and the further information that came to light regarding the Board's recklessness and breach of its fundamental fiduciary duties to HP and its shareholders, Plaintiff decided that the SAC would benefit from amplifying the existing allegations regarding Autonomy specifically and HP's acquisitions more generally, as well as adding the derivative allegations that necessarily arise from the recently-available information.  Plaintiff reached out to HP's counsel first raising "a possible further amendment of the Copeland Complaint" on November 28, 2012, and then seeking HP's non-opposition to amend the SAC upon such basis on December 10, 2012; HP refused. Plaintiff thereafter asked that, despite HP's indicated opposition, if HP would "agree to defer the present briefing schedule on HP's planned motion to dismiss pending the resolution of a motion to [amend the SAC]."

---

[1] With the Board's blessing, management in 2008 paid $13.9 billion to buy EDS, an acquisition so disastrous that HP recently had to write down $8 billion of its value. Defendant Mark Hurd, the CEO who sought that deal, got paid $43 million in fiscal year 2008, en route to getting fired two years later.

[2] Dkt. No. 114, ¶ 7 n.2.

PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO MODIFY SCHEDULING ORDER                                                           2

Notwithstanding such request, HP and the Individual Defendants subsequently filed their motions to dismiss the SAC starting December 14, 2012. On December 17, 2012, HP's counsel informed Plaintiff's counsel that it would not agree to "your request to defer the briefing schedule" pending a decision on this motion.

As set forth below, this Motion should be granted because there is good cause and nothing inequitable, burdensome, or untimely about allowing Plaintiff to amend the SAC to further amplify his allegations regarding the Autonomy acquisition. Defendants have not answered the SAC, the parties have not held a Federal Rules of Civil Procedure Rule 26(f) discovery planning conference and discovery has not begun.

## II. PERTINENT FACTS AND PROCEDURAL HISTORY AND HP'S NOVEMBER 20, 2012 AUTONOMY WRITE-DOWN

### A.   Pertinent Facts

This shareholder action, brought individually and derivatively on behalf of HP, seeks to recover for, *inter alia*, the systemic and pervasive breaches of fiduciary duty and other malfeasance spanning many years on the part of current and former senior officers and directors of the Company, including serious violations of the Foreign Corrupt Practices Act ("FCPA") and other illegal payments by HP employees, the payment of secret benefits and improper compensation to Defendant Hurd and his "special friend," the payment of excessive and unnecessary payments to fired CEOs, and the reckless, ego-driven bidding for and ultimate acquisition of 3Par on September 27, 2010.  Dkt. No. 114, ¶¶ 3, 7, 114, 119-125, 128-137, 140-146.  The action also seeks to recover for the Board's repeated violations of federal proxy disclosure laws, including misrepresenting or failing to disclose the deficient internal controls that allowed a widespread scheme of overseas bribery and kickbacks, the qualifications and suitability of director candidates, the ineffectiveness of HP's auditor, and the extent of and calculus for executive compensation.  *Id.*, ¶¶ 2, 42-50, 53-66, 69-83, 85-104, 106-116.  Although the SAC made no specific claim as to the

Autonomy acquisition, which occurred subsequent to the commencement of the action, the SAC nonetheless references the Autonomy acquisition as yet another instance of the expensive, reckless and ego-driven deals that HP's Board and senior management have pursued through the years. *Id.*, ¶¶ 7 n.2, 18, 48, 103, 148.

### B.    Pertinent Procedural History

Plaintiff made pre-suit demands on the Board to initiate suit on August 23, 2010 and August 28, 2010. After the Board's constructive rejection of those demands, Plaintiff commenced this action on March 7, 2011, updating and further particularizing his allegations with an amended complaint filed on December 2, 2011. Dkt. No. 65. The Court dismissed the derivative claims on October 10, 2012, requiring Plaintiff to provide more allegations showing wrongful refusal of the demands, either through facts challenging the Board's independence based on events after receiving the demands, facts showing that '"Independent' Committee" formed a result of the demands and its counsel were conflicted, or facts that show that the Independent Committee did not perform its duties in an informed manner and with due care. Dkt. No. 113, at 7-13. Despite holding that Plaintiff had sufficiently alleged individual harm, the Court also dismissed the direct claims because it found that Plaintiff did not request any commensurate individual relief. *Id.*, at 13-16.

Plaintiff was given until November 1, 2012 to amend the complaint. As such, Plaintiff duly filed the SAC with additional allegations that remedied the defects the Court identified on November 1, 2012. On November 6, 2012, the Court modified its scheduling order according to the stipulated agreement between Plaintiff and Defendants to set deadlines for briefing on the motions to dismiss that HP's counsel had indicated would be filed (even before seeing the SAC).

### C.    HP'S November 20, 2012 Autonomy Write-Down

Approximately two weeks later, on November 20, 2012, HP's most recent CEO, Defendant Whitman, announced in a conference call that, in connection with HP's fourth quarter and full year 2012 results, HP would take a $8.8 billion

"impairment charge" related to Autonomy, the "majority" of which "is linked to serious accounting improprieties, disclosure failures and outright misrepresentations that occurred prior to HP's acquisition." Hewlett-Packard's CEO Discusses F4Q 2012 Results – Earnings Call Transcript, attached as Exhibit 1 to the Declaration of Richard D. Greenfield ("Greenfield Decl."), at 4. Current CFO Catherine A. Lesjak clarified that of the $8.8 billion write-down, "over $5 billion is related to accounting improprieties, disclosure failures and misrepresentations that occurred prior to HP's acquisition of Autonomy and the associated impact on the financial performance of the business over the longer term," and the "balance of the write-down is linked to the recent trading of HP stock." *Id.* at 5. When Defendant Whitman was asked by an analyst about internal accountability, she referred to two former officers, Defendant Leo Apotheker and Shane Robison, the latter of whom was the executive vice president, chief technology officer and chief strategy officer from 2002 to 2011. *Id.* at 8. Although she acknowledged the Board's role in approving the acquisition, noting that "we feel terribly about that," she ultimately shifted the blame on the accounting firms that audited the acquisition. *Id.*

Nevertheless, even though Defendant Whitman served as a Board member at the time and, according to recent news media accounts, expressed serious reservations about the acquisition to her fellow Board members, the Board proceeded to approve the Autonomy deal. Indeed, Defendant Whitman has now admitted that there was something amiss with HP's internal reporting structure during the acquisition process – due diligence reported to the Chief Strategy Officer masterminding the acquisition rather than the relatively more objective Chief Financial Officer. *Id.* In the following weeks, analysts and journalists investigating the matter saw something more:

> **"The implosion of the Autonomy deal has raised questions about how HP and its army of lawyers, accountants and investment bankers could overlook warning signs and gone ahead with the acquisition. Reuters spoke with close to a dozen people directly connected with the deal or the accounting investigation. The picture that emerges is of a company so desperate to plot a new course that it may have been far too accepting of Autonomy's published and audited accounts."**

Poornima Gupta, Nadia Damouni & Paul Sandle, *How a desperate HP suspended disbelief for Autonomy deal*, Reuters, Nov. 30, 2012, *available at* http://www.reuters.com/article/2012/11/30/us-hp-autonomy-idUSBRE8AT09X20121130, attached as Exhibit 2 to the Greenfield Decl., at 1. Regardless, what is clear is that under the stewardship of the Board and its officers, HP rushed into yet another disaster, undeterred and unmitigated by past experience or general prudence, paying more than $11 billion and a 58% premium over share price for a company that never made more than $1 billion in annual revenue, in a move widely criticized by industry analysts and condemned by the market. *See* David Goldman, *HP takes $8.8 billion writedown on Autonomy*, CNNMoney, Nov. 20, 2012, *available at* money.cnn.com/2012/11/20/technology/enterprise/hp-earnings/index.html, attached as Exhibit 3 to the Greenfield Decl.

In the wake of the Autonomy Write-Down and the avalanche of negative information that came to light, additional litigation was commenced by other HP shareholders against many of the same defendants named in this litigation.

## III.    ARGUMENT

Rule 15(a) of the Federal Rules of Civil Procedure provides that, prior to trial, the "court should freely give leave" to a party to amend its pleadings. Fed. R. Civ. P. 15(a). The United States Supreme Court explained:

> "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given" . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, "[d]istrict courts generally consider four factors in determining whether to deny a motion to amend: "bad faith, undue delay, prejudice to the opposing party, and the futility of amendment." *Bahn v. Korean Airlines Co.*, 642 F.3d 685, 701 (9th Cir. 2011) (quoting *Kaplan v. Rose*, 49

F.3d 1363, 1370 (9th Cir. 1994)).  Indeed, "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis original).  However, if there is a scheduling order in place that sets a cut-off date for amending the pleadings, the moving party must also demonstrate "good cause" for modifying that order under Rule 16(b)(4) of the Federal Rules of Civil Procedure.  *See Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992); *Livingston Hearing Aid Ctr., Inc. v. Insound Med., Inc.*, Case No. 5:11-CV-01965 EJD, 2012 U.S. Dist. LEXIS 47139, at *2 (N.D. Cal. April 3, 2012).

Here, there is good cause to grant leave to amend under Rule 15(a) or to modify the Court's scheduling order accordingly: there is no bad faith, no undue delay, no prejudice to Defendants, and no futility to the amendment.  Accordingly, the Motion should be granted.

A.    **There is Good Cause**

Rule 16(b)(4)'s "good cause" standard "primarily considers the diligence of the party seeking the amendment" regarding the proposed amendment.  *Johnson*, 975 F.2d at 609; *Nucal Foods, Inc. v. Quality Egg LLC*, No. CIV S-10-3105 KHM-CKD, 2012 U.S. Dist. LEXIS 10067, at *14 (E.D. Cal. Jan. 27, 2012) (finding diligence where plaintiff moved to amend complaint based on facts uncovered during discovery "because [p]laintiff could not have exercised a greater degree of diligence in order to amend at an earlier state in litigation").  The diligence standard is met if a party moves soon after recognizing the significance of information it had access to, so long as the significance was not glaringly obvious.  *Compare Mytee Prods. v. H.D. Prods.*, Case No. 05 CV-2286 W (CAB), 2007 U.S. Dist. LEXIS 84933, at *8 (S.D. Cal. Nov. 16, 2007) ("this is not a case where one party has been ignoring an obvious issue, critical to determining liability") *with Osalan v. Apple Am. Group*, Case No: C 08-4722 SBA, 2010 U.S. Dist. LEXIS 53830, at *11 (N.D. Cal. May 5, 2010) (finding no good cause

to plaintiff's request to amend complaint to add new class representations because of delay for over half a year in taking action from defendant's alleged evasiveness). Alternatively, there is good cause if the non-moving party was already on notice regarding the substance of the amendment. *See Sousa v. Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan*, 252 F. Supp. 2d 1046, 1059 (E.D. Cal. 2002) (finding good cause and modifying scheduling order to include defendant's statute of limitations defense where plaintiff had been aware of defense's existence).

The circumstances here satisfy either standard for good cause. Plaintiff exercised his utmost diligence on news regarding the Autonomy debacle -- he could not have been aware of the Autonomy Write-Down before the original November 1, 2012 deadline for the SAC, since he had no access to that information until it was released to the public on November 20, 2012; he then kept abreast of the market analysis and emerging factual revelations until he decided soon thereafter that supplementing the SAC with the newly released and analyzed information would be beneficial. *Cf. Sorensen v. Lexar Media, Inc.*, Case No. 5:08-CV-0095 EJD, 2012 U.S. Dist. LEXIS 36742, at *4 (N.D. Cal. Mar. 19, 2012) (stating that "recent discovery" of relevant material through discovery would satisfy "good cause" standard). Moreover, Defendants were on notice of Plaintiff's interest in the Autonomy acquisition and its relevance to this action. Allegations mentioning the Autonomy acquisition were initially raised in the first Amended Complaint filed December 2, 2011, two months after the acquisition was consummated. Dkt. No. 65, ¶¶ 4 n.2, 94. These allegations were expanded upon in the SAC. Dkt. No. 114, ¶¶ 7 n.2, 18, 48, 103, 148. Indeed, since many of the Defendants had access to the internal investigation that ultimately led to the Autonomy Write-Down, not only is it implausible for Defendants to suggest that they were not on notice, but it is also implausible for Defendants to suggest that they did not anticipate any proposed amendments after November 1, 2012 since they should have been aware of the

PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO MODIFY SCHEDULING ORDER                                    8

impending November 20, 2012 press release.  Accordingly, good cause to modify the Court's scheduling order is readily met.

### B.      There Is No Bad Faith Or Undue Delay

As explained above, HP first announced the Autonomy Write-Down on November 20, 2012, weeks after Plaintiff's November 1, 2012 deadline to file an amended complaint.  Plaintiff had no access to the results of the internal investigation or the newly available information until HP released it to the public in the course of its quarterly review, so Plaintiff could not possibly have included the information in the SAC.  As indicated above, after digesting HP's press release and the factual reports and analysis that arose in the following weeks to decide if amending the SAC would be beneficial, Plaintiff promptly communicated to HP's counsel first the possibility of amendment on November 28, 2012 and then his intent to seek leave to amend on December 10, 2012, prior to the deadline for Defendants to file their motions to dismiss.  Thus, the circumstances indicate that there is no dilatory motive or undue delay.  *Compare McConnell v. Red Robin Int'l, Inc.*, No. C 11-03026 WHA, 2012 U.S. Dist. LEXIS 53942, at *9 (N.D. Cal. April 17, 2012) (finding no undue delay or bad faith when there was "no reason for plaintiff to have sought amendment earlier" based on the facts available) *with Shum v. Countrywide Home Loans, Inc.*, Case No.: 2:11-cv-01932-GMN-RJJ, 2012 U.S. Dist. LEXIS 145836, at *11-*12 (D. Nev. Oct. 10, 2012) (finding bad faith or dilatory motive where plaintiff requests leave to amend after filing complaint that "appear to be cut-and-pasted from other sources, and do not address the facts of his case or respond to [d]efendants allegations").

### C.      There Is No Undue Prejudice To Defendants

"Prejudice is the touchstone of the inquiry under Rule 15(a)." *Eminence Capital, LLC*, 316 F.3d at 1052.  However, the "party opposing amendment bears the burden of showing prejudice." *Jeong v. Minn. Mut. Life Ins. Co.*, 46 Fed. Appx. 448, 450 (9th Cir. 2002) (citation omitted).  The Ninth Circuit considers the need to reopen discovery, the delay in the proceedings, and additional litigation expense as a result of

the amendment, as factors that support a finding of prejudice.  *See Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001); *Jeong*, 46 Fed. Appx. at 450 ("the relevant prejudice concerns the late amendment's effect on the opposing party's ability to respond").  However, the prejudice must be "undue." *Padilla v. Sears*, Case No., 5:12-CV-00653 EJD, 2012 U.S. Dist. LEXIS 162207, at *5 (N.D. Cal. Nov. 13, 2012) (finding that defendants did not meet their burden by simply claiming that the amendment would result in additional costs as well as prolong the duration of the litigation).

Here, discovery has not begun, and whatever expense and delay will be minimal since Plaintiff only seeks to supplement the SAC with newly available information rather than reconstruct Plaintiff's theories.  *See James v. UMG Recordings, Inc.*, No. C 11-1613 SI, 2012 U.S. Dist. LEXIS 146759, at *12 (N.D. Cal. Oct. 11, 2012) (finding that amendment to add new claim and new plaintiffs insufficient to show undue prejudice because defendant "will not have to radically change its litigation strategy").  Moreover, any expense and delay relating to Defendants' motions to dismiss is insufficient to show undue prejudice.  *See Cuevas v. City of Campbell*, Case No.: 5:12-CV-03087-EJD, 2012 U.S. Dist. LEXIS 150415, at *4 (N.D. Cal. Oct. 18, 2012) ("That an amended complaint would essentially moot [d]efendants' pending Motion to Dismiss and Motion to Strike simply does not constitute undue prejudice").  Indeed, Plaintiff notified Defendants of his intent to modify the SAC before Defendants moved to dismiss the SAC, so any expense incurred in that respect was self-inflicted.  Accordingly, there is no undue prejudice sufficient to meet Defendants' burden.

In any event, it is highly unlikely that the proposed amendment will cause any of the Defendants to have to re-draft their now-filed motions to dismiss. Plaintiff's proposed Third Amended Complaint attached hereto as Exhibit A will not raise any new or different legal arguments that Defendants have not already raised in their motions. Thus, an argument by the Defendants that Plaintiff's raising the issue of

PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO MODIFY SCHEDULING ORDER                                                    10

amendment on the eve of Defendants' anticipated filing of motions to dismiss or thereafter would be implausible. Moreover, Defendants cannot demonstrate the slightest prejudice from the few months' delay that will result should the Court grant this motion.

### D.   The Amendment Is Not Futile

"A proposed amendment is futile 'only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Padilla*, 2012 U.S. Dist. LEXIS 162207, at *5 (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).  The test is whether the proposed amendment would be "immediately 'subject to dismissal'" under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Fulton v. Advantage Sales & Mktg., LLC*, No. 3:11-cv-01050-MO, 2012 U.S. Dist. LEXIS 150151, at *7 (N.D. Cal. Oct. 12, 2012) (quoting *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011), *aff'd on reh'g en banc on other grounds*, 681 F.3d 1041 (9th Cir. 2012)); *compare Allied World Nat'l Assur. Co. v. SK PM Corp.*, Case No.: 1:10-cv-01262-LJO-JLT, 2012 U.S. Dist. LEXIS 163642, at *11 (E.D. Cal. Nov. 15, 2012) (finding asserted amendment not futile because "[p]laintiffs' claims do not appear patently frivolous and the new facts are not duplicative of allegations made in the original complaint) *with Ambrose v. Coffey*, No. Civ. S-08-1664 LKK/GGH, 2012 U.S. Dist. LEXIS 157889, at *22 (E.D. Cal. Nov. 1, 2012) (finding amendment futile because claims time-barred).

Here, the additional allegations regarding the Autonomy acquisition and the Autonomy Write-Down that Plaintiff seeks to add are relevant to and would strengthen the allegations already made in the SAC, providing the Court with a better illustration of the claims Plaintiff asserts against the Individual Defendants and further address some of the concerns expressed by the Court in dismissing the previous Complaint.  Accordingly, the proposed amendment is far from futile.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, and based on the authority cited, Plaintiff respectfully requests that the proposed Third Amended Complaint attached hereto as Exhibit A be deemed filed and that the existing scheduling order be modified accordingly.

Respectfully submitted,

Dated:  December 27, 2012             /s/ Richard D. Greenfield
                                      Ilene F. Brookler (Bar #269422)
                                      Richard D. Greenfield
                                      Marguerite R. Goodman
                                      GREENFIELD & GOODMAN, LLC
                                      250 Hudson Street, 8th Floor
                                      New York, NY  10013
                                      Tel: 917-495-4446
                                      ibrookler@gmail.com
                                      whitehatrdg@earthlink.net
                                      twowhitehats@earthlink.net

                                      Scott R. Shepherd
                                      SHEPHERD, FINKELMAN, MILLER
                                      & SHAH, LLP
                                      35 E. State Street
                                      Media, PA  19063
                                      Tel: 610-891-9880
                                      sshepherd@sfmslaw.com

                                      Rose F. Luzon (Bar #221544)
                                      SHEPHERD, FINKELMAN, MILLER
                                      & SHAH, LLP
                                      401 West A Street, Suite 2350
                                      San Diego, CA  92101
                                      Tel.: 619-235-2416
                                      rluzon@sfmslaw.com

                                      Attorneys for Plaintiff, A.J. Copeland

PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
AND TO MODIFY SCHEDULING ORDER                                   12

## ATTESTATION PURSUANT TO GENERAL ORDER 45

I, Rose F. Luzon, am the ECF User whose identification and password are being used to file the following documents:  PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND TO MODIFY SCHEDULING ORDER, WITH EXHIBIT A; DECLARATION OF RICHARD D. GREENFIELD IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND TO MODIFY SCHEDULING ORDER, WITH EXHIBITS 1-3; and [PROPOSED] ORDER.  In compliance with General Order 45.X.B., I hereby attest that each of the signatories above has concurred in this filing.

Dated:  December 28, 2012

/s/ Rose F. Luzon
Rose F. Luzon (Bar #221544)
SHEPHERD, FINKELMAN,
MILLER & SHAH, LLP
401 West A Street, Suite 2350
San Diego, CA 92101
Tel.: 619-235-2416

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2012, a true and correct copy of the following documents were filed via CM/ECF filing and copies of such filing were sent to all counsel of record registered to receive electronic filings:

- PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND TO MODIFY SCHEDULING ORDER, WITH EXHIBIT A;
- DECLARATION OF RICHARD D. GREENFIELD IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND TO MODIFY SCHEDULING ORDER, WITH EXHIBITS 1-3; and
- [PROPOSED] ORDER.

Date: December 28, 2012                 SHEPHERD, FINKELMAN,
                                        MILLER & SHAH, LLP

                                        /s/ Rose F. Luzon
                                        Rose F. Luzon (Bar #221544)
                                        401 West A Street, Suite 2350
                                        San Diego, CA 92101
                                        Tel.: 619-235-2416
                                        rluzon@sfmslaw.com