UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| A.J. COPELAND,<br><br>    Plaintiff,<br><br> v.<br><br>RAYMOND J. LANE et al.,<br><br>    Defendants<br><br> - and -<br><br>HEWLETT-PACKARD COMPANY, a Delaware corporation<br><br>    Nominal Defendant. | Case No.: 5:11-CV-01058 EJD<br><br>**ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE**<br><br>**[Re: Docket Nos. 119, 122, 124, 126, 128, 140]** |

The above-captioned lawsuit is a shareholders' suit against Nominal Defendant Hewlett–Packard Company and several of its directors and officers. Presently before the Court are the following motions: Defendants' Motions to Dismiss the Second Amended Complaint ("SAC"); Plaintiff's Motion for Leave to Amend; and Plaintiff's Motion to Strike Defendants' Requests for Judicial Notice. For the reasons discussed below, Plaintiff's Motion for Leave to Amend is DENIED, and Defendants' Motions to Dismiss the SAC are GRANTED. The Motion to Strike is DENIED AS MOOT.

1

Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

## I. Background

The Court will refer to a previous Order dated October 10, 2012 dismissing Plaintiff's First Amended Complaint for a detailed description of the facts related to this action. See Order Granting Motions to Dismiss, Denying Motion to Strike (hereinafter "10/10/2012 Order"), Docket Item No. 113. However, the Court will now present a summary of the facts pertinent to the motions presently before the Court.

### A. The Parties

Plaintiff A.J. Copeland ("Plaintiff") owns and has continuously owned common stock in Nominal Defendant Hewlett–Packard Company ("HP") throughout the entire period of the alleged wrongdoing. SAC ¶ 16.

The Defendants in this action can be categorized into four groups, each of which has filed a separate motion to dismiss the SAC. First is Nominal Defendant HP, an entity incorporated under the laws of Delaware with principal executive offices and corporate headquarters located in Palo Alto, California.

The second group of Defendants will herein be referred to as the "Director Defendants." This group is comprised of Defendants Marc L. Andreessen ("Andreessen"), Lawrence T. Babbio, Jr. ("Babbio"), Sari M. Baldauf ("Baldauf"), Rajiv L Gupta ("Gupta"), John H. Hammergren ("Hammergren"), Joel Z. Hyatt ("Hyatt"), John Joyce ("Joyce"), Robert Ryan ("Ryan"), Lucille Salhany ("Salhany"), and G. Kennedy Thompson ("Thompson"). Thompson was elected to the HP Board of Directors in 2006. Andreessen, Babbio, Balduf, Gupta, and Hammergren are directors of HP who have been directors during the entire period of the alleged wrongful conduct. Hyatt, Joyce, Salhany, and Ryan are former directors of HP who resigned on January 20, 2011.

The third group of Defendants will herein be referred to as the "New Director Defendants." This group is comprised of Defendants Leo Apotheker ("Apotheker"), Shumeet Banerji ("Banjeri"), Raymond J. Lane ("Lane"), Gary Reiner ("Reiner"), Patricia Russo ("Russo"),

2

Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

1  Dominique Senequier ("Senequier"), and Meg Whitman ("Whitman"). Lane has been HP's
2  Executive Chairman since September 2011 and previously served as HP's non-executive Chairman
3  from November 2010 to September 2011. Apotheker was HP's President and Chief Executive
4  Officer ("CEO") from November 1, 2010 to September 22, 2011. Reiner became a member of the
5  Board on January 20, 2012. Whitman became HP's President and CEO on September 22, 2011 and
6  was elected to the Board in January 2011. Banjeri, Russo, and Senequier are directors of HP who
7  have been directors during the entire period of alleged wrongful conduct.

8  The fourth group consists solely of Defendant Mark V. Hurd ("Hurd") who was President
9  and CEO of HP and was terminated from or voluntarily resigned his positions on August 6, 2010.

### B. Allegations in the SAC

In the SAC, Plaintiff brings forth causes of action for violations of Section 14(a) of the Securities Exchange Act, breach of fiduciary duty and waste of corporate assets, unjust enrichment, and breach of the duty of candor.

The Exchange Act allegations concern Proxy Statements that were used to solicit votes from Plaintiff and other HP shareholders for, inter alia, the election and reelection of the Board members, retention of Ernst & Young LLP ("EY") as HP's auditor, and the approval of compensation packages for various HP executives. Id. ¶ 229. Plaintiff alleges that these Proxy Statements contained untrue statements and material omissions so as to constitute a violation of the Exchange Act and SEC Rule 14a-9. Id. ¶¶ 228, 231. In particular, Plaintiff alleges, these Proxy Statements "failed to disclose the extent to which the Company's entire Board of Directors were responsible for the wrongdoing that caused the Company to be exposed to, inter alia, massive amounts in fines, restitution and other damages including amounts paid to or on behalf of Defendant Hurd and the eventual losses it will sustain as a result of its acquisition of 3PAR for more than $2.3 billion." Id. ¶ 231.

Count I of the SAC is for violations of Section 14(a) and Rule 14a-9 in connection with the Proxy Statement issued for the 2012 Annual Meeting of Shareholders. Id. ¶ 219. This Count is asserted by Plaintiff individually and against the Defendants who were members of HP's Board of Directors when the 2012 Proxy Statement was issued and disseminated to HP shareholders. Id.

Count II of the SAC is for violations of Section 14(a) and Rule 14a-9 in connection with the Proxy Statements issued for the 2010, 2011, and 2012 Annual Meeting of Shareholders. Id. ¶¶ 227–28. This Count is asserted by Plaintiff derivatively on behalf of HP against the individual Defendants who were members of the Board when the 2010, 2011, and 2012 Proxy Statements were issued and disseminated to HP shareholders. Id.

Count III of the SAC alleges that the individual Defendants breached their fiduciary duties and wasted corporate assets. Id. ¶ 237. Plaintiff alleges that the individual Defendants violated their corporate responsibilities in at least the following ways:

> (a) Affirmatively and repeatedly declining to stop and prevent HP's illegal payment of bribes after receiving reports of such illegal activity and "red flags" indicating such widespread illegality, and/or consciously disregarding such reports and activity; and/or consciously covering up the wrongdoing when they became aware of it; and/or "stonewalling" the SEC, the DOJ and others investigating such illegal conduct; (b) failing to pursue claims against those who have caused the Company to violate the False Claims Act; (c) permitting Defendant Hurd to act as he did in connection with the Hurd-Fisher scandal, paying him over $12 million for his silence upon his termination, and otherwise as described herein; (d) wasting enormous amounts of the Company's assets by authorizing management to engage in reckless bidding for and the ultimate acquisition of 3PAR for more than $2.3 billion; (e) wasting the Company's assets by authorizing excessive compensation to Defendants Apotheker, Hurd, Whitman, Lane and other executives; and (f) failing to implement a CEO succession plan, and recklessly hiring and firing CEOs resulting in enormous corporate waste in the form of millions of dollars in severance payments and otherwise.

Id. ¶ 238. Plaintiff also identifies the Defendants' dissemination of the allegedly misleading Proxy Statements as a breach of their fiduciary duties to HP and its shareholders. Id. ¶ 240.

The SAC contains two remaining claims. Count IV—unjust enrichment—alleges that several of the individual defendants have been unjustly enriched due to receiving excessive

4
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

compensated despite the alleged deficiencies in their job performance. Id. ¶¶ 244–47. Count V—breach of the duty of candor—iterates the allegations regarding the issuance and dissemination of the allegedly false and misleading Proxy Statements. Id. ¶ 249.

### C. Plaintiff's Demands on the Board

On August 23 and 28, 2010 Plaintiff made pre-suit demands on the Board as is required for corporate derivative lawsuits by Rule 23.1 of the Federal Rules of Civil Procedure. Id. ¶ 155. In the Demand Letters, Plaintiff essentially demanded that the Board investigate and bring litigation with regard to some or all of the allegations he has presented in the SAC.

On November 4, 2010 and again on November 17, 2010, Plaintiff's counsel was informed by HP Deputy General Counsel John F. Schultz ("Schultz") that the Board was in the process of investigating the allegations in Plaintiff's Demand Letters. Id. ¶ 162. The Board had appointed two directors to an Independent Committee to investigate the allegations and make a recommendation to the Board as to how to proceed.[1] Id. ¶¶ 161–63. The Independent Committee had retained Andrew Levander ("Levander") of Dechert LLP as independent counsel. Id. ¶ 163. Throughout the next few months, Levander had been in contact with Plaintiff and Plaintiff's counsel in various capacities. See id. ¶¶ 170–77. Plaintiff's counsel requested information and documents regarding the legitimacy of the Committee's investigation, including how the members of the Independent Committee had been selected and how it came about that Levander would be the investigator. Id. Plaintiff alleges that none of this information was provided other than the Levander's indication that Defendants Lane and Reiner were members of the Committee. Id. ¶ 177. Upon recommendation of the Committee, the Board rejected Plaintiff's pre-suit demands.[2] Id. ¶¶ 179, 181.

---

[1] Defendants contend that these directors joined the Board after Plaintiff's demands were made. See Def. HP's Mot. to Dismiss 3, Docket Item No. 119.

[2] The precise timeline appears to be in dispute among the parties. In particular, the parties disagree as to precisely when the Board rejected Plaintiff's Demand Letters. In its Motion to Dismiss, Nominal Defendant HP asserts that the original Complaint—filed on March 7, 2011—was filed "while the Board's investigation was in progress." Def. HP's Mot. to Dismiss 4. Plaintiff, on the other hand, contends that at the time of the filing of his original Complaint, the

5
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

### D. Procedural History

On March 7, 2011, Plaintiff initiated this lawsuit by filing the original Complaint. See Docket Item No. 1. On December 2, 2011, Plaintiff filed the First Amended Complaint ("FAC"). See Docket Item No. 65. As noted, on October 10, 2012, this Court dismissed the FAC. See Docket Item No. 133. On November 1, 2012, Plaintiff filed the SAC. See Docket Item No. 114. Defendants filed their Motions to Dismiss the SAC on Dec. 13, 14, and 17, 2012. See Docket Item Nos. 119, 122, 124, 126.

On December 28, 2012, Plaintiff filed a Motion for Leave to Amend the SAC and to file a Third Amended Complaint. See Docket Item No. 128. On January 31, 2013, Plaintiff filed a Motion to Strike several exhibits and statements in Defendants' Motions to Dismiss or documents in support therein. See Docket Item No. 140.

## II. Motion for Leave to Amend

The Court will first address Plaintiff's Motion for Leave to Amend the SAC. In this Motion, Plaintiff seeks to amend the SAC to add, inter alia, allegations related to actions HP took regarding its acquisition of Autonomy Corporation ("Autonomy"). See Pl.'s Mot. for Leave to Amend 4, Docket Item No. 128; see also id. Ex. A (Plaintiff's proposed Third Amended Complaint).

On November 20, 2012, Defendant Whitman announced that HP would be taking an $8.8 billion "impairment charge" related to its acquisition of Autonomy the previous year due to "serious accounting improprieties, disclosure failures and outright misrepresentations that occurred prior to HP's acquisition." Id. at 4–5 (citing Decl. of Richard D. Greenfield in Supp. of Pl.'s Mot. to Amend Ex. 1, "Hewlett-Packard's CEO Discusses F4Q 2012 Results – Earnings Call Transcript"). Plaintiff seeks to amend the SAC to include these facts and argues that the SAC

---

Board had already "de facto rejected Plaintiff's Demands with the appointment of the 'Independent Committee' and its pre-disposed members, who wasted substantial amounts of HP's money by hiring Levander to perform a purported investigation and generate a report with a foregone conclusion." Pl.'s Opp'n to Def.'s Motions to Dismiss, Docket Item No. 139. Ultimately, the precise timeline on this matter does not affect the Court's ruling on the present motions.

6
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

would benefit from and be amplified by the inclusion of allegations related to this impairment charge. He argues that the fact of the Autonomy Write-Down now allows him to add claims that the Board Member Defendants acted recklessly, breached their fiduciary duty, and wasted corporate assets in acquiring Autonomy. Plaintiff admits that he "could not have been aware of the Autonomy Write-Down before the original November 1, 2012 deadline for the SAC" because HP's announcement was not released until November 20, 2012. Id. at 8. And Plaintiff notes that he "seeks to supplement the SAC with newly available information rather than reconstruct Plaintiff's theories." Id. at 10.

Because Plaintiff seeks to amend the SAC so as to include allegations related to events that occurred after he filed the SAC on November 1, 2012, the applicable Federal Rule of Civil Procedure is Rule 15(d). See Cabrera v. City of Huntington Park, 159 F.3d 374, 382 (9th Cir. 1998) ("Rule 15(d) permits the filing of a supplemental pleading which introduces a cause of action not alleged in the original complaint and not in existence when the original complaint was filed ."); see also Ctr. for Food Safety v. Vilsack, C 10-04038 JSW, 2011 WL 672802, at *3 (N.D. Cal. Feb. 18, 2011) (treating a Rule 15(a) motion to amend as a Rule 15(d) motion to supplement where plaintiff seeks to allege facts occurring after the original pleading was filed). Rule 15(d) provides as follows:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d). Additionally, because Plaintiff's requested amendment would modify a scheduling order, the Court notes the applicability of Rule 16(b)(4), which allows courts to grant an extension of time under its scheduling order "only for good cause." Under Rule 16(b)'s "good cause" standard, courts primarily consider the diligence of the party seeking the modification. See

7
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

Zivkovic v. So. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).

Under Rule 15(d), the power to grant supplemental pleadings is discretionary and "upon such terms as are just." Fed. R. Civ. P. 15(d). While leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action. See Planned Parenthood of So. Arizona v. Neely, 130 F.3d 400, 402 (9th Cir. 1997). Matters newly alleged in a supplemental complaint must have some relation to the claims set forth in the original pleading. See Keith v. Volpe, 858 F.2d 467, 474 (9th Cir. 1988). Leave to file a supplemental complaint therefore may not be granted where the supplemental complaint involves a new and distinct cause of action that should be the subject of a separate suit. See Neely, 130 F.3d at 402 (abuse of discretion to allow plaintiffs to supplement complaint after final judgment to attack newly amended statute); cf. Grifin v. County Sch. Bd. of Prince Edward County, 377 U.S. 218, 226, (1964) (supplemental pleading proper where new transactions not new cause of action, but merely part of "same old cause of action" originally raised). Ultimately, it is the goal of Rule 15(d) to "promote judicial efficiency." Neely, 130 F.3d at 402.

The Court finds that it will deny Plaintiff's Motion for Leave to Amend the SAC to include the allegations related to the Autonomy Write-Down. Plaintiff's proposed amendments would include allegations about events that were not included in the SAC as underlying his breach of fiduciary duty and waste of corporate assets claims. Count III of the SAC enumerates the events and actions that Plaintiff alleges have amounted to the Defendants' breaching of their fiduciary duties and wasting corporate assets. See SAC ¶ 238. Absent from this list is the allegation that the acquisition of Autonomy constituted a breach of the directors' duties. See id. Indeed, Plaintiff admits this in the SAC as well as in his Motion for Leave to Amend and supporting documents. See, e.g., SAC ¶ 7 n.2 ("No specific claim is made in this Complaint with respect to the Autonomy transaction, which occurred subsequent to the commencement of this litigation."); Pl.'s Mot. for Leave to Amend 3–4, Docket Item No. 128 ("Although the SAC made no specific claim as to the

8
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

Autonomy acquisition, which occurred subsequent to the commencement of the action, the SAC nonetheless references the Autonomy acquisition as yet another instance of the expensive, reckless and ego-driven deals that HP's Board and senior management have pursued through the years."). The Court also notes that, as Defendants indicate, the Board that approved the Autonomy acquisition (in August 2011) looks markedly different from the Board involved in the allegations of the SAC. See Def.'s Opp'n to Pl.'s Mot. for Leave to Amend 14. Plaintiff's proposed Third Amended Complaint would, therefore, introduce new, separate, and distinct causes of action that would likely implicate individuals not named as defendants in this action—an introduction that is not permitted under Rule 15(d).

Additionally, the fact that Plaintiff's proposed Autonomy-based claims are already being litigated in another forum is further reason to deny Plaintiff's Motion for Leave to Amend. Beginning on or around November 26, 2012, HP shareholders began filing securities class actions, shareholder derivative, and ERISA-based lawsuits in this District that focused on the Autonomy acquisition.[3] Judge Charles R. Breyer ordered these actions related on January 3, 2013.[4] See Related Case Order, 3:12-cv-05980-CRB, Docket Item No. 22, Decl. of Cheryl W. Foung in Supp. of Def.'s Opp'n to Pl.'s Motion for Leave to Amend Ex. A. The allegations in many of the complaints underlying these suits involve the same allegations related to the Autonomy acquisition as does Plaintiff's proposed Third Amended Complaint. See, e.g., Compl. in Espinoza v. Lynch, C-12-06025 (N.D. Cal. filed Nov. 27, 2012), Foung Decl. Ex. B. The Ninth Circuit has held it

---

[3] See Nicolow v. Hewlett-Packard Co., C-12-05980 (N.D. Cal. filed Nov. 26, 2012); Ricciardi v. Lynch, C-12-06003 (N.D. Cal. filed Nov. 27, 2012); Espinoza v. Lynch, C-12-06025 (N.D. Cal. filed Nov. 27, 2012); Bascheri, et al. v. Apotheker, C-12-06091 (N.D. Cal. filed Nov. 30, 2012); Pokoik v. Hewlett-Packard Co., C-12-06074 (N.D. Cal. filed Nov. 30, 2012); Bertisch v. Apotheker, C-12-06123 (N.D. Cal. filed Dec. 3, 2012); Laffen v. Hewlett-Packard Co., C-12-06199 (N.D. Cal. filed Dec. 6, 2012); San Jose Div. the City of Birmingham Ret. & Relief Sys. v. Apotheker, C-12-06416 (N.D. Cal. Filed Dec. 18, 2012); Lustig v. Whitman, C-12-06410 (N.D. Cal. filed Dec. 18, 2012); Tola v. Lynch, C-12-06423 (N.D. Cal. filed Dec. 18, 2012); Morrical v. Whitman, C-12-06434 (N.D. Cal. filed Dec. 19, 2012).

[4] Since that time, two additional cases focusing on the Autonomy acquisition have been filed in this Court. One of those cases, Neumann v. Hewlett–Packard Co., 5:13-cv-284-EJD (N.D. Cal. filed Jan. 18, 2013), is a securities class action, which, together with Nicolow and Pokoik, is the subject of multiple motions to consolidate. See Foung Decl. Exs. D, F. The other case, Kotyuk v. Hewlett-Packard Co., 5:13-cv-00301-EJD (N.D. Cal. filed Jan. 22, 2013), is an ERISA complaint. See id. Ex. E.

Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

appropriate for a district court to deny a motion for leave to amend to add a new claim that was the subject of a separate action. See In re Exxon Valdez, 318 F. App'x 545, 547 (9th Cir. 2009); see also In re Celera Corp. Derivative Litig., No. C 10-02935 JW, 2011 WL 1431692, at *2 (N.D. Cal. Apr. 14, 2011) ("[W]hen a claim not only could have been the subject of a separate action, but it actually is the subject of a separate action, leave to amend is impermissible."); Ctr. for Food Safety, 2011 WL 672802 (denying a motion to supplement the complaint where the new facts that the proposed supplemental complaint seeks to allege were already being litigated in another forum). Similarly, in this case, allowing Plaintiff to add the Autonomy-based claims would not only prejudice Defendants to have to litigate both suits, but would also confuse and burden all parties and the courts. Such a decision that would contravene the goal of Rule 15(d), which is to "promote judicial efficiency." See Neely, 130 F.3d at 402.

Accordingly, because it falls short of the Rule 15(d) amendment standard, Plaintiff's Motion to for Leave to Amend is denied.[5]

### III. Motions to Dismiss the SAC

#### A. Legal Standard: Rule 12(b)(6) Motion To Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[5] The Courts notes that even if Rule 15(a) were applied to Plaintiff's Motion—as Plaintiff contends it should—the result would be the same. While Rule 15(a) is arguably a more liberal standard that requires courts to "freely give leave when justice so requires[,]" the properness of a proposed amendment is still subject to a test as to whether it would prejudice the opposing party. See Jackson v. Bank of Hawaii, 902 F.2d 1385 (9th Cir. 1990). As noted, allowing the amendment that would cause Defendants to have to litigate the same claims in two different forums would be prejudicial. See Haley v. Cohen & Steers Capital Management, Inc., No. C 10-3856 PJH, 2011 WL 6817924 (N.D. Cal. Dec. 12, 2011). Furthermore, even if Rule 15(a) were applied, Plaintiff would still have to show that he has "good cause" for amending the SAC to add allegations related to the Autonomy acquisition pursuant to Rule 16(b). Given the several cases involving the Autonomy acquisition before Judge Breyer, he would unlikely be able to sufficiently meet the "good cause" requirement.

10
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

inference that the defendant is liable for the misconduct alleged." Id. Recitals of the elements of a cause of action and conclusory allegations are insufficient. Id.

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Id. at 555, 570. In considering the sufficiency of a claim, the court must accept as true all of the factual allegations contained in the complaint. Id. at 555–56. However, the court is not required to accept as true legal conclusions cast in the form of factual allegations. Id. at 555.

If dismissal is granted under Rule 12(b)(6), leave to amend should be allowed unless the pleading could not possibly be cured by the allegation of other facts. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). If amendment would be futile, however, a dismissal may be ordered with prejudice. Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996) (internal quotations omitted).

### B. Derivative Claims

#### 1. Demand Refusal and the Business Judgment Rule

A shareholder derivative suit is a uniquely equitable remedy in which a shareholder asserts on behalf of a corporation a claim belonging not to the shareholder, but to the corporation. Aronson v. Lewis, 473 A.2d 805, 811 (Del.1984) (overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000)). Pursuant to Federal Rule of Civil Procedure 23.1, which governs derivative actions, a shareholder's complaint must state with particularity "any effort by the plaintiff to obtain the desired action from the directors" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1.

Rule 23.1 imposes a higher standard of pleading than does Rule 8(a). The Ninth Circuit recently held in a demand refusal case that "Rule 23.1 and applicable Delaware law require a

11
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

shareholder bringing a derivative lawsuit to plead with particularity that the shareholder made a pre-suit demand on the corporation and that the corporation wrongly refused to act." Lucas v. Lewis, 428 F. App'x 694, 695–96 (9th Cir. Apr.15, 2011) (emphasis added) (citing Fed. R. Civ. P. 23.1(b)(A) & (B); Grimes v. Donald, 673 A.2d 1207, 1220 (Del. 1996)).

In order to demonstrate standing to pursue a derivative claim, a plaintiff must show that he has met the demand requirement. If a demand is made and rejected, the board rejecting the demand is entitled to the presumption of the business judgment rule unless the stockholder can allege facts with particularity creating a reasonable doubt that the board is not entitled to the benefit of the presumption. See Grimes, 673 A.2d at 1220; see also Levine v. Smith, 591 A.2d 194, 212 (Del. 1991), overruled on other grounds by Brehm, 746 A.2d 244 (the board's refusal of the demand to pursue the action is subject to judicial review according to the traditional business judgment rule).

Under the business judgment rule, a court will not substitute its judgment for that of the board, and the board's decision will be upheld unless it cannot be attributed to any rational business purpose. See In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 74 (Del. 2006) (en banc); Levine, 591 A.2d at 207. A board of directors' decision will be respected by the courts unless the directors are interested or lack independence relative to the decision, do not act in good faith, act in a manner that cannot be attributed to a rational business purpose, or reach their decision by a grossly negligent process that includes the failure to consider all material facts reasonably available. Brehm, 746 A.2d at 264 n. 66. "A shareholder who makes a demand concedes the disinterestedness and independence of a majority of the board to respond to the demand and waives any claim that demand is excused." See Furman v. Walton, No. C 06–3532 SBA, 2007 WL 1455904, at *4 (N.D. Cal. May 16, 2007) (citing Grimes, 673 A.2d at 1219–20; Rales v. Blasband, 634 A.2d 927, 935 n. 12 (Del. 1993)).

Where a shareholder's complaint, as here, is predicated on the wrongful refusal of her demand, the only issue for a trial court to determine is the application of the business judgment rule to the board's refusal of the shareholder's demand. See Levine, 591 A.2d at 212–13 (Del. 1991).

12
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

As such, the only relevant question is whether the directors acted in an informed manner and with due care, and in a good faith belief that their action was in the best interest of the corporation. See id. at 198.

### 2. Application of the Demand Refusal Requirements to the SAC

In the 10/10/2012 Order, this Court addressed the same legal question as is now present—whether Plaintiff had sufficiently raised a "reasonable doubt" as to the (a) the disinterestedness and independence of the Board, (b) the good faith with which the Board acted in rejecting Plaintiff's demand, and (c) the informed manner and due care by which the Board rejected the demand. See 10/10/2012 Order. In that Order, this Court held that Plaintiff failed to show the requisite reasonable doubt in each instance. Accordingly, the Court will proceed by addressing whether Plaintiff has now rectified the FAC's deficiencies in the SAC in meeting the "reasonable doubt" demand requirement.

#### a. Disinterested and Independent

As discussed above, a shareholder who has made a demand "concedes the disinterestedness and independence of a majority of the board to respond to the demand." Furman, 2007 WL 1455904, at *4. However, the Delaware Supreme Court has held that a demand does not necessarily concede independence "conclusively and in futuro for all purposes relevant to the demand[,]" and thus a plaintiff could still demonstrate wrongful refusal based on the post-demand conduct of the Board. Scattered Corp. v. Chi. Stock Exch., Inc., 701 A.2d 70, 74–75 (Del. 1997) (overruled on other grounds by Brehm, 746 A.2d 244). In light of that holding, the Court held in the 10/10/2012 Order that Plaintiff failed to show a reasonable doubt as to the Board's disinterestedness and independence because he did not "assert[] facts challenging the Board's independence based on events after receiving the Demands." 10/10/2012 Order, at 7 ("[Plaintiff's] allegations challenge the directors' interest and independence with respect to the conduct

13
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

underlying the Demands, not their response following receipt of the Demands. These allegations were waived when Copeland made his Demands."). Similarly, with regard to the SAC, Plaintiff has not asserted non-conclusory, factual allegations showing post-Demand disinterestedness. The Court does note that Plaintiff's allegations regarding post-demand conduct of the Board may be relevant in the determination as to the next two prongs of the demand requirement: whether, in rejecting the Demand, the Board acted in good faith and with due care.

### b. Good Faith

In the 10/10/2012 Order, this Court rejected Plaintiff's claims in the FAC that the Board did not act in good faith in rejecting the Demands. Specifically, the Court rejected the following arguments: "(1) the Board did not include Plaintiff in its investigation; (2) the Board refused to provide Plaintiff with certain information; (3) the Board claimed to be investigating the Demands while it was searching for members to constitute the Independent Committee; (4) the investigation was a 'sham' or 'whitewash' because the Independent Committee members chosen were predisposed to reject the demands; (5) the Independent Committee did not have ultimate authority to respond to the Demands; and (6) the Committee's counsel was also predisposed to reject the Demands. The court addresses each of these allegations below." 10/10/2012 Order, at 8–10. The SAC repeats these allegations in several instances. Compare, e.g., FAC ¶¶ 31, 33, 103, 116–18 with SAC ¶¶ 160–62, 164, 167–68, 177–79 (making conclusory allegations that the Independent Committee investigation was a "sham" and a "whitewash"). Accordingly, for the reasons explained in the 10/10/2012 Order, the allegations of the Board's lack of good faith in the SAC are rejected.

The SAC does introduce a new set of facts related to the allegation that HP was identified in a bribery indictment in Germany on August 30, 2012. See SAC ¶ 65. The SAC contains the following allegation: "Although the Company now claims that it is cooperating in the investigations of it, including those underway by the DOJ and SEC, for years it 'stonewalled' such investigations under the direct supervision of Defendant Hurd and General Counsel Holston." Id.

14
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

The Court rejects the notion that this allegation contributes to the introduction of reasonable doubt about the Board's good faith investigation into Plaintiff's demand. The allegation that HP had "stonewalled" the German and other investigations is conclusory and rejected for the reasons explained in the 10/10/2012 Order. Moreover, Plaintiff's allegation about the German indictment is irrelevant to the propriety of the Board's refusal of Plaintiff's Demands, which took place over a year earlier. And finally, the Court notes that the indictment of three foreign HP employees fails to impugn the Board's exercise of its internal corporate oversight function and ability to evaluate Plaintiff's Demands on an unrelated matter. Cf. Desimone v. Barrows, 924 A.2d 908, 940 (Del. Ch. 2007) ("Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so.").

### c. Informed Manner and Due Care

In order to raise a reasonable doubt regarding whether a board acted with due care, a plaintiff must plead with particularized facts that the board reached its "decision by a grossly negligent process that includes the failure to consider all material facts reasonably available." Furman, 2007 WL 1455904, at *2 (citing Brehm, 746 A.2d at 244). In attempt to meet this standard, Plaintiff iterates the following allegations in the SAC, all of which were rejected by the Court in the 10/10/2012 Order: that the Independent Committee and Board spent insufficient time investigating Plaintiff's Demands; that witness interviews were too few and not taken under oath; and that the Committee unreasonably delegated investigatory duties to Dechert. 10/10/2012 Order, at 11–12. Because the Court finds that Plaintiff offers no new facts or arguments challenging the due care of the Board in rejecting the Demands, the Court finds that Plaintiff has failed to introduce a reasonable doubt for the reasons explained in the 10/10/2012 Order. See id.

### 3. Conclusion on Plaintiff's Derivative Claims

For the foregoing reasons, the Court finds that Plaintiff has failed to meet the demand refusal requirements to grant him standing to pursue his shareholder derivative claims. Plaintiff has failed to introduce a reasonable doubt as to the disinterestedness and independence of the Board, the good faith by which the Board investigated the claims he asserted in his Demands, and the informed manner and due care by which the Board rejected his Demands. As such, Plaintiff's derivative claims are dismissed.

### C. Direct Claims

Plaintiff argues that, in addition to his derivative claims, he has also asserted direct claims for violations of the Section 14(a) of the Exchange Act in Count I of the SAC. Plaintiff bases his disclosure claim on the allegations that the 2012 Proxy Statement contained untrue statements, material omissions, and misrepresentations. See SAC ¶¶ 218–25. Specifically, Plaintiff contends that the Proxy Statement unlawfully failed to disclose the following:

> (1) a fair summary of the advice, counsel and analyses performed and provided to the HP Board and/or the HR and Compensation Committee by Compensation Advisory Partners LLC ("CAP"), its independent compensation consultant, SNR Denton US LLP ("SNR"), its independent legal counsel, and Meridian Compensation Partners, LLC ("Meridian"), management's compensation consultant; (2) how the HP Board's HR and Compensation Committee selected CAP, SNR, and Meridian in connection with determining executive compensation, and the amount of fees HP paid to these entities in connection with their services; (3) the compensation data for named executive officers of peer companies, including the median, mean, and range for the peer group data set; and (4) the weight given to the factors reviewed by the directors in determining executive compensation.

Id. ¶ 77; see also Pl.'s Opp'n to Def.'s Mots. to Dismiss 33–34. Plaintiff also asserts that the Proxy Statement failed to state that the Board allegedly does not follow a "100% performance-based" executive compensation policy. See SAC ¶ 78. Plaintiff contends that these were material misrepresentations and omissions. Id. ¶¶ 77–78. Plaintiff claims he has been harmed in the form of

16
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

being denied the opportunity to cast a fully informed shareholder vote and requests remedy in the form of equitable relief such as an order to void or amend the 2012 Proxy Statement and cast a re-vote. Pl.'s Opp'n to Def.'s Mots. to Dismiss 39–40; SAC at 105–06, 114.

In support of their motions to dismiss, Defendants argue that Plaintiff has recast a derivative proxy claim as a direct claim based on lack of disclosure. In determining the nature of a shareholder's claim, "the Court will independently examine the nature of the wrong alleged and any potential relief to make its own determination of the suit's classification . . . Plaintiffs' classification of the suit is not binding." Tooley v. Donaldson, Luftkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004). Courts examine: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually). See Indiana Elec. Workers Pension Trust Fund, IBEW v. Dunn, 352 F. App'x 157, 162 (9th Cir. 2009) (citing Feldman v. Cutaia, 951 A.2d 727, 732 (Del. 2008)). To establish a direct action, "[t]he stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." Id. at 1039.

In the 10/10/2012 Order, the Court evaluated whether similar Section 14(a) claims in the FAC based on alleged omissions and misrepresentations in the 2010 and 2011 Proxy Statements were to be classified as direct or derivative claims through the two-prong Tooley test. See 10/10/2012 Order, at 13–16. The Court found that the first prong—that the shareholder him/herself suffered the direct harm alleged rather than the corporation—could be met by Plaintiff's allegations: "[W]here a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is almost always an individual, not corporate, harm." 10/10/2012 Order, at 15 (citing In re Tyson Foods, Inc., 919 A.2d 563, 601 (Del. Ch. 2007). However, the Court concluded that the second prong had not been met because

17
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

Plaintiff had not pleaded facts showing that he could receive a remedy that would benefit him individually. Id.

With regard to the SAC and the allegations about the 2012 Proxy Statements presently before the Court, the Court adopts a similar reasoning as in the 10/10/2012 Order. Even if Plaintiff could show that he has suffered a real and direct harm independent of a harm to HP, he fails to show that he could receive a remedy that would benefit him individually. As the Court noted in the previous Order,

> "Direct proxy disclosure claims, if made promptly, may support equitable relief such as an order to amend a proxy solicitation and require a re-vote. However, when the eggs have been irretrievably scrambled[,] . . . there is no possibility of effective equitable relief. . . . [E]ven if other remedies 'flow naturally' from the avoidance of the vote, these remedies are unavailable because they impermissibly conflate [plaintiff's] direct claim with a derivative claim."

10/10/2012 Order, at 15 (quoting Calamore v. Juniper Networks Inc., 364 F. App'x 370, 372 (9th Cir. 2010) (some alterations in original) (emphasis added) (internal quotation marks and citations omitted)). Plaintiff contends that—unlike with the 2010 and 2011 Proxy Statements and the FAC—at time of the filing of the SAC, the term of the directors elected in 2012 had not yet expired.[6] Pl.'s Opp'n to Def.'s Mots. to Dismiss 40. While this may be true, Plaintiff's request that the Court order a new annual meeting and vote for the 2012 Board is simply brought too late as, at the time of the filing of the SAC, the directors elected in 2012 had already substantially served their one-year terms.[7] As such, it is not feasible that the relief sought would benefit Plaintiff as an individual shareholder, for the "eggs have already been irretrievably scrambled." Calamore, 364 F. App'x at 372. This is similar to the outcome in Calamore where the plaintiff filed suit ten months after the vote was solicited by the challenged proxy statement. See id.

---

[6] The fact that the terms of the directors elected in 2010 and 2011 had expired was used by the Court in the 10/10/2012 Order as partial reasoning for finding that the second Tooley prong had not been met. See 10/10/2012 Order, at 15–16.

[7] The 2012 Proxy Statement was filed on February 3, 2012, and the voting occurred on March 21, 2012. See SAC ¶ 42. The SAC was filed on November 1, 2012.

18
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE

Accordingly, the Court classifies the claims in Count I of the SAC as derivative claims rather than direct claims. As such, these claims are dismissed for the reasons stated above in Section III.B of this Order.

## IV. Conclusion and Order

For the foregoing reasons the Court orders the following: Plaintiff's Motion for Leave to Amend the SAC (Docket Item No. 128) is DENIED; Defendants' Motions to Dismiss the SAC (Docket Nos. 119, 122, 124, 126) are GRANTED WITH PREJUDICE and the SAC is DISMISSED WITHOUT LEAVE TO AMEND; and Plaintiff's Motion to Strike (Docket Item No. 140) is DENIED AS MOOT.

Since this Order effectively disposes of the entire case, the Clerk shall close this file upon entry of Judgment.

**IT IS SO ORDERED.**

Dated: May 6, 2013



EDWARD J. DAVILA
United States District Judge

19
Case No.: 5:11-CV-01058 EJD
ORDER DENYING MOTION FOR LEAVE TO AMEND, GRANTING MOTIONS TO DISMISS, DENYING MOTION TO STRIKE